UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EMANUEL NICOLESCU | : | |
|     Plaintiff, | : | NO. 3:15-CV-756 (VLB) |
| | : | |
|     v. | : | |
| | : | |
| UNITED STATES OF AMERICA | : | |
|     Defendant | : | |
| | : | |

## ORDER DENYING MOTION TO WITHDRAW AND FOR APPOINTMENT OF NEW COUNSEL AND MOTION TO SUBSTITUTE COUNSEL
## [DKTS. 48 AND 49]

Pending before the Court are Attorney J. Patten Brown III's motion to withdraw and have new counsel appointed for Emmanuel Nicolescu, and petitioner Nicolescu's motion to substitute counsel, and continue his evidentiary hearing. [Dkts. 48 and 49.] For the reasons given below, the motions are DENIED.

I.     Background: Procedural History

On May 20, 2015, Emmanuel Nicolescu filed a § 2255 habeas petition pro se. [Dkt. 1]. Three years later, on June 7, 2018, the Court set an evidentiary hearing [Dkt. 19]. On August 20, 2018, the Court granted Nicolescu's motion to appoint counsel. [Dkts. 25, 20]. The Court appointed Steven Rasile. To give Rasile time to prepare, the Court granted Nicolescu's motion to continue the hearing to November 1, 2018. [Dkts. 26, 27]. Rasile alerted Nicolescu that Rasile was co-counsel on a current case with Bruce Koffsky, one of Nicolescu's trial attorneys. [Dkt. 29 at ¶¶3-14.] At their second meeting, Nicolescu requested that Rasile withdraw based on the appearance of a conflict since Rasile was representing

1

Nicolescu on a habeas corpus petition citing ineffective assistance of counsel of Rasile's current co-counsel. *Id.* at ¶¶15-19. On October 15, 2018, the Court granted Nicolescu's motion for appointment of new counsel and continued the evidentiary hearing to January 17, 2019. [Dkt. 30.] On November 7, the Court appointed J. Patten Brown III. [Dkt. 32.] After three continuances requested because of attorney trial scheduling, claim investigation, and difficulty in locating trial materials, the evidentiary hearing is now scheduled for December 6, 2019. [Dkts. 34, 35, 38, 39, 41, 42.]

In letters dated September 3, 2019, September 9, 2019, and October 1,2019, Nicolescu notified the Court of his wish to change counsel. [Dkts. 45, 46, and 49.] These letters are best analyzed as motions to substitute counsel. Nicolescu writes that Brown has been difficult to contact, uncommunicative, does not have faith in his case, and has not done work on his case. In earlier letters, Nicolescu writes that he hopes to keep his December 6, 2019 hearing date, but he later moves to continue the hearing date if counsel is substituted. [Dkts. 45, 46, 49.] On September 30, 2019, Brown moved to withdraw and for appointment of new counsel. [Dkt. 48.] He writes that Nicolescu's "unhappiness [with him] arose recently, and stems, in [his] opinion from his expectations and the fact [that] his analysis of the claims do[es] not comport with mine." *Id.* at ¶5. He writes that it took a long time to obtain Nicolescu's file from "numerous lawyers around the country," that he has answered Nicolescu's questions and analyzed his claims, and that he has interviewed prior trial counsel. *Id.* at ¶¶3-4. Brown asks that "the Court take whatever action it deems appropriate." *Id.* at ¶5.

On Friday, October 4, 2019 at 11:30 a.m., the Court held a hearing on whether to grant the motion. [Dkts. 47, 50].

II.     Law

*A. Right to Appointment of Counsel*

A habeas petitioner has the right to counsel at an evidentiary hearing under Rule 8(c) of the Rules governing Section 2255 proceedings:

> If an evidentiary hearing is warranted, the judge must appoint an attorney to represent a moving party who qualifies to have counsel appointed under 18 U.S.C. § 3006A. The judge must conduct the hearing as soon as practicable after giving the attorneys adequate time to investigate and prepare. These rules do not limit the appointment of counsel under Sec. 3006A at any stage of the proceeding.

"[A] district court's failure to follow Rule 8(c) of… the Federal Rules Governing §2255 Cases is clear error." *Graham v. Portuondo*, 506 F.3d 105, 107 (2d Cir. 2007). [1] "All of the circuits to consider the issue have held that Rule 8(c) mandates the appointment of counsel at required evidentiary hearings and that the district court's failure to follow the rule is not subject to harmless error review and requires vacatur or reversal." *Id.* (citing cases from six other circuits).

District courts must appoint counsel to indigent petitioners for § 2255 hearings, even if the petitioner did not specifically request counsel at the hearing. *Id.* at 108 (vacating district court judgment where petitioner was unrepresented at hearing, even though petitioner did not request counsel) (citing *United States v.*

---

[1] Graham v. Portuondo itself addresses a §2254 case rather than a §2255 proceeding. However, it reasons that "the appointment of counsel requirement of the Rules Governing §2254 Cases is identical to that of the Rules Governing § 2255 Proceedings," and therefore explicitly addresses its holding to both § 2254 and § 2255 cases.

3

*Vasquez*, 7 F. 3d 81, 85 (5th Cir. 1993)). In *Vasquez,* cited by the *Portuondo* court, the Fifth Circuit explained that a petitioner's failure to request counsel for a hearing did not waive his or her right to counsel because "a waiver of a right to counsel must be knowingly and intelligently made." *Vasquez*, 7 F.3d at 86 (citing a Fifth Circuit case addressing the Sixth Amendment right to counsel).

### B. Substitution of Appointed Counsel

In the absence of precedent on substitution of counsel appointed under Rule 8(c), the Court looks to precedent on substitution of counsel in the Sixth Amendment context as a guideline.

A district court's rulings on motions to substitute counsel and to withdraw are reviewed for abuse of discretion. *United States v. Simeonov*, 252 F.3d 238, 241 (2d Cir. 2001) (motion to substitute counsel); *Whiting v. Lacara*, 187 F.3d 317, 320 (2d Cir. 1999) (motion to withdraw).

Defendants who are "seeking substitution of assigned counsel must… afford the court with legitimate reasons" for the request. *McKee v. Harris*, 649 F.2d 927, 932 (2d Cir. 1981). "It is settled that where a defendant voices a seemingly substantial complaint about counsel, the court should inquire into the reasons for dissatisfaction." *Id.* at 933. When "an accused makes known to the court in some way that he has a complaint about his counsel, the court must rule on the matter." *Id.* at 934.

A motion for substitution of counsel is reviewed for: (1) the timeliness of the request; (2) the thoroughness of the lower court's inquiry into the complaint;

(3) the seriousness of the disagreements between the lawyer and the client; and (4) the extent to which the defendant's conduct contributed to a breakdown in communication. *United States v. John Doe No. 1*, 272 F.3d 116, 123 (2d Cir. 2001) (affirming district court's denial of defendant's motion to substitute counsel where breakdown in communication was not total, attorney had filed motions on behalf of defendant, and breakdown in communication largely due to defendant's refusal to cooperate and threats against lawyer); *Simeonov*, 252 F.3d at 241 (affirming district court's denial of defendant's motion to substitute counsel where counsel met with defendant three times in relevant week and counsel advocated aggressively for client, even though counsel and defendant disagreed about strategy and counsel expressed concerns about defendant's testimony's credibility). Once a request for substitute counsel is denied, the court may apprise the defendant of his or her remaining options: "keeping this lawyer or proceeding *pro se.*" *United States v. Eltayib*, 88 F.3d 157, 168 (2d Cir. 1996).

The district court has "broad discretion" to refuse to permit criminal defense counsel to withdraw if there is no "substantial reason" to delay the proceedings while substitute counsel prepares. *United States v. Weinberg*, 852 F.2d 681, 687 (2d Cir. 1988). On the other hand, in a civil rights civil action, the Second Circuit held where plaintiff's' "desire both to dictate legal strategies to his counsel and to sue counsel if those strategies are not followed place the lawyer in [an] impossible [] situation," "he must be permitted to withdraw." *Whiting v. Lacara*, 187 F.3d 317, 322 (2d Cir. 1999)

    *III.*    <u>Analysis</u>

A. *Motion to Withdraw and Substitute Counsel*

In an abundance of caution, the Court determined that an evidentiary hearing on Defendant's motion was warranted in this case. [Dkt. 19]. Therefore, under Rule 8(c) and *Portuondo*, Nicolescu had a right to counsel at the hearing. 506 F.3d at 107. He has affirmatively exercised the right and has not waived it. [Dkt. 20]; *see Vasquez*, 7 F.3d at 86 (Fifth Circuit). The Court conducted a hearing at which it arranged for standby counsel to be available to advise Defendant on the issues at hand. Both appointed and standby counsel were available and advised Defendant during a recess of the hearing after the Court administered its advisement.

The Court advised Defendant of his Sixth and Fifth Amendment rights: to counsel; to remain silent and against self-incrimination; to knowingly and voluntarily waive one's constitutional rights; and to self-representation. The Court also advised Defendant of the advantages of being represented by counsel and the disadvantages of self-representation. Finally the Court advised Defendant against self-representation. Defendant expressed no dissatisfaction and acknowledged his understanding of his rights and of the risks of self-representation.

In addition to advising Defendant of the factors the Court would weigh in deciding whether to persist in his request for withdrawal of his attorney, the Court advised Defendant of the factors the Court would consider in ruling on his motion. Finally, the Court informed Defendant that if the Court ruled Attorney Brown could withdraw, the Court could decline to appoint another attorney to

6

represent Nicolescu, in which case Nicolescu would have to represent himself, which the Court advised against.

After its advisement the Court declared a recess for Defendant to speak with appointed and standby counsel, to consider his options, and to inform the court if he wanted Attorney Brown to continue representing him or represent himself. Defendant requested additional time to consider his options, which the Court granted.

Based on the information presented at the hearing and discussed below, the Court finds that there are no legitimate reasons for Mr. Nicolescu's lack of confidence in Attorney Brown. First, the Court finds that there has not been a total breakdown in communications between Brown and Nicolescu. Brown visited Nicolescu in August of this year. [Dkt. 45.] Further, Brown has analyzed and given Nicolescu advice on Nicolescu's legal claims. [Dkt. 48.] While Nicolescu at some points has claimed that Brown has failed to give him any advice, e.g. [Dkt. 49], Nicolescu has also admitted that Brown has given his advice and opinions on Nicolescu's legal claims, but that Nicolescu disagrees with Brown's opinions. *E.g.* [Dkts. 45, 46]. Brown is not required to agree with Nicolescu's assessment of Nicolescu's legal claims, and, in fact, may be obligated to disagree. *See McKee v. Harris*, 649 F.2d 927, 932 (2d. Cir. 1981) (concluding that counsel's "pessimistic forecast does not rise to the level of good cause for substitution of counsel" because "[t]he starting point for good representation is a realistic assessment of the prospects of success").

The Court understands that Brown has, in the past, promised to visit Nicolescu within a given period of time and failed to do so. [Dkt. 49.] Brown has met with Nicolescu twice, in February and in August. [Dkt. 45, 46]. "Even if [Nicolescu] would… prefer[] more in-person meetings with counsel," there is not necessarily a total breakdown in communication. *United States v. Scott*, 637 F. App'x 10, 15 (2d Cir. 2015) (Summary Opinion). All attorneys are busy – and the best are frequently the busiest. While Nicolescu is entitled to representation by a competent attorney, his expectations must be reasonable. *See John Doe No. 1*, 272 F.3d at 123 ("In evaluating a denial of a motion to substitute counsel, a defendant's own conduct contributing to the communication breakdown should be evaluated.").[2]

Second, the Court finds that Brown has diligent represented Nicolescu. Brown has completed the arduous task of locating and securing Nicolescu's file after contacting multiple lawyers. [Dkts. 48, 38, 41.] He ultimately located file material in the state of Texas. *Id.* He has reviewed and analyzed Nicolescu's file and his claims. [Dkt. 48.] He hired an investigator, in light of Nicolescu's fact-intensive claims. [Dkts. 48, 38.] He interviewed Nicolescu's prior trial counsel. [Dkt. 48.] Taken together, his actions demonstrate adequately diligent representation.

---

[2] In addition, Brown has affirmed that his non-appearance was due in part to the unexpected difficulty of recovering the full file from the numerous lawyers involved in Nicolescu's case, [Dkts. 38 and 41], a file Brown needed before he could analyze Nicolescu's claims. [Dkt. 41.] Since the file is now complete, the Court expects that Brown will be able to keep to his promised visitation schedule going forward.

Finally, the Court finds that Brown has not failed to consult with Nicolescu on hearing strategy. Brown must "consult with" and "obtain consent" from Nicolescu as to "decisions regarding the exercise or waiver of trial rights" such as whether to "testify in his or her own behalf." *Florida v. Nixon*, 543 U.S. 175, 187 (Sixth Amendment context). Moreover, "[a]n attorney undoubtedly has a duty to consult with the client regarding important decisions, including questions of overall defense strategy." *Id.* However, Brown need not obtain Nicolescu's approval of "every tactical decision." *Taylor v. Illinois*, 484 U.S. 400, 418 (quoted in *Florida*, 543 U.S. at 187) (Sixth Amendment appointment context). A party appointed counsel "has no automatic right to insist that his lawyer make motions that he would prefer to be made, … to make supplementary *pro se* motions when his attorney declines to make them, … or to insist on new counsel whenever he and his attorney differ on [motions] strategy[.]" *United States v. Rivernider*, 828 F.3d 91, 107 (2d Cir. 2016) (citations omitted) (Sixth Amendment appointment context). Nicolescu has alleged that Brown has not permitted Nicolescu to review material before filing it with the court. [Dkt. 49]. However, he has not alleged that Brown has refused to consult with Nicolescu on strategy, or failed to obtain his consent with regard to decisions implicating Nicolescu's basic trial rights.

For these reasons, the Court DENIES the motion to withdraw and have new counsel appointed.

### B. Motion to Continue

In addition, the Court denies Nicolescu's motion to continue his evidentiary hearing. [Dkt. 49]. The Court has already granted six continuances of this hearing,

delaying it by more than fourteen months. [Dkts. 21, 27, 30, 35, 39, 42.] At this point, there must be a "substantial reason for allowing any further delay in the proceedings." *United States v. Weinberg*, 852 F.2d 681, 687 (2d Cir. 1988). Nicolescu moves for additional time to allow substitute counsel to prepare. [Dkt. 49.] However, given the Court's denial of Nicolescu's motion for appointment of new counsel, there is no need to continue the hearing on those grounds. Therefore, the Court DENIES Nicolescu's motion to continue.

                                                  IT IS SO ORDERED.

                                                  _____/s/_____
                                                  Hon. Vanessa L. Bryant
                                                  United States District Judge

Dated at Hartford, Connecticut: October 10, 2019