UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EMANUEL NICOLESCU | : | Civil No. 3:15cv756 (VLB) |
| v. | : | |
| UNITED STATES OF AMERICA | : | October 7, 2020 |

## GOVERNMENT'S MEMORANDUM IN RESPONSE TO REQUEST FOR TESTIMONY (DOC. NO. 83)

The Government submits this memorandum in response to a request by the petitioner, Emanuel Nicolescu ("Nicolescu" or "petitioner"), for service of a subpoena on Alexandru Lucian Nicolescu ("A. Nicolescu") and for the production of A. Nicolescu at the evidentiary hearing on October 30, 2020, and, if necessary, for a continuance of ten days to permit A. Nicolescu's transportation to Connecticut. A. Nicolescu is a sentenced prisoner housed at CI Reeves III, a privately run correctional institution in Pecos, Texas. The Government has learned that A. Nicolescu's facility does not have the capability to make him available for video testimony; accordingly, A. Nicolescu's testimony would only be available by transporting him to Connecticut. As discussed below, A. Nicolescu's testimony would be of no value in this matter, and even if there were some minimal value to his presence, it is vastly outweighed by the burden of transporting him to this district.

I. **Procedural Background**

On May 20, 2015, Nicolescu filed a petition seeking habeas relief pursuant to 28 U.S.C. § 2255, as well as a motion for discovery. Doc. Nos. 1, 2. This Court

issued an Order to Show Cause on May 29, 2015, as to why the relief requested in the habeas petition should not be granted. Doc. No. 4. By submission dated December 29, 2015, the Government opposed Nicolescu's petition and discovery motion, and Nicolescu filed a reply to the Government's response on February 29, 2016. Doc. Nos. 11, 16.

On September 17, 2020, petitioner filed a Motion for Leave to Proceed in Forma Pauperis, by which he sought issuance of a subpoena for A. Nicolescu, for A. Nicolescu's production at the evidentiary hearing, and for a continuance to permit his appearance. Doc. No. 83. Petitioner submitted a subpoena for A. Nicolescu. Doc. No. 83-1 at 1. Petitioner also attached what purports to be a statement by A. Nicolescu made on April 27, 2015. Doc. 83-1 at 3.

During the status call on September 29, 2020, the Court inquired of the Government whether A. Nicolescu's testimony could be taken via Zoom. The Government agreed to inquire of A. Nicolescu's facility, and also indicated it might file a response to petitioner's request for A. Nicolescu's testimony.

II. **Background on A. Nicolescu**

A. Nicolescu was initially charged by indictment on November 15, 2012, with one count of Attempt to Interfere with Commerce by Extortion, in violation of 18 U.S.C. § 1951(a), one count of Conspiracy to Interfere with Commerce by Extortion, in violation of 18 U.S.C. § 1951(a), and one count of Possession of a Stolen Vehicle, in violation of 18 U.S.C. § 2313(a). *See* Criminal Case No. 3:12CR234 (VLB), Doc. 1. The charges against A. Nicolescu stem from the same course of conduct as those against petitioner Nicolescu. On November 14, 2013, A. Nicolescu was arrested in

the United Kingdom pursuant to an arrest warrant issued as a result of an extradition request from the United States to the United Kingdom. A. Nicolescu unsuccessfully contested his extradition, which was litigated in the UK for several months at the lower court, appellate court, and European Court of Human Rights. He remained detained for the entire period of litigation over his extradition. During the pendency of his extradition case in the UK, A. Nicolescu repeatedly asked for new appointed counsel, and was found by the court to be intelligent and capable of instructing his lawyers how to represent him, but deliberately chose not to do so. This situation was responsible for a principal part of the pre-extradition delay. The United Kingdom district court's order also referenced the fact that it had commissioned a psychiatric report, but A. Nicolescu was unhappy with the report and spent much time delaying the hearing as a result. In the words of the district court "Mr. Nicolescu has already been successful in manipulating the court process to the extent that 2 hearings have been aborted and legal aid transferred." *See* Exs. 1 and 2.

A. Nicolescu was transported to the United States on November 25, 2014, and was presented on November 26, 2014, before the Hon. Donna F. Martinez. He has been detained since that time. At A. Nicolescu's first appearance, he declined to be represented by the Federal Defender and requested to proceed *pro se*. Case No. 3:12CR234 (VLB), Doc. No. 12. Several hearings ensued, on December 3 (Doc. 14), 9 (Doc. 17), and 18 (Doc. 23), to discuss the issue of representation and competency. Eventually, A. Nicolescu agreed to be represented by Attorney Nuala

Droney. ECF No. 36. A competency evaluation was ordered on March 24, 2015. ECF No. 47.

On January 8, 2016, A. Nicolescu appeared before this Court and entered pleas of guilty to counts one and two of the indictment, pursuant to a plea agreement. On May 15, 2019, A. Nicolescu was sentenced by this Court to 10 years' imprisonment. He is currently serving that sentence.

### III. A. Nicolescu's Potential Testimony Is Irrelevant and Unreliable, and Any Value Is Outweighed by the Burden of Producing Him in Court

Petitioner has submitted a "statement" of A. Nicolescu, dated April 27, 2015, in which A. Nicolescu claims that (1) on December 16, 2014, he was shown a plea agreement that "offered time of 125 to 155 months" that was "also offered to Emanuel Nicolescu as a plea agreement"; and (2) on March 19, 2015, he was told by Detective Peter Pinelli that he "should not make the same mistake as Emanuel Nicolescu, he (Emanuel) being offered the same deal as me (Alexandru Nicolescu) but he 'went all inn' which the detective would preffer (sic) that I would not, have the same 20 years sentence." Doc. 83-1.

Neither of these statements are credible or relevant to the Court's determination here. The principal issues in this habeas petition are whether: (1) the Government's March 11, 2011 email constituted a plea offer that petitioner's counsel was required to communicate; (2) counsel did, in fact, communicate that offer; and (3) petitioner was prejudiced, *i.e.,* petitioner would have accepted the terms of the alleged offer and the Court would have approved it. *See Lafler v. Cooper*, 132 S. Ct. 1376, 1384-85 (2012); *Purdy v. United States*, 208 F.3d 41, 44-45

(2d Cir. 2000). A. Nicolescu's statement is not relevant to the Court's inquiry into any of these issues.

Initially, A. Nicolescu does not even purport in his statement to have any firsthand knowledge of petitioner's communications with his counsel, or any contemporaneous conversation with petitioner regarding his interest in a plea in 2011. Thus A. Nicolescu's statement is plainly irrelevant to those inquiries.

Nor does A. Nicolescu's statement have any bearing on whether the March 2011 email constituted a plea offer when made. At most, *even if accurate*, A. Nicolescu's statement pertains only to how the Government characterized its communication with petitioner's counsel more than three years after it was sent, in a conversation with a separately charged co-conspirator in the context of a separate plea discussion. That is irrelevant to whether, as a matter of law, that communication actually did constitute a plea offer when made in 2011. The Government's March 2011 email speaks for itself in that regard. Put differently, A. Nicolescu's statement does nothing to assist the Court in its decision here.

Of course, that is assuming A. Nicolescu's statement is accurate. Even without hearing from A. Nicolescu, the Court has ample reason to doubt his contention that the Government told him that petitioner had received the same offer he did. "125 to 155 months" is not an actual guidelines range that could have been suggested in a plea agreement or otherwise. *See* U.S.S.G. Chapter 5, Part A (Sentencing Table). The Government located in its file a proposed plea agreement from December 2014 addressed to A. Nicolescu (during the time A. Nicolescu was *pro se*), but that agreement suggested a range of 135 to 168 months' imprisonment,

not "125 to 155 months." *See* Exhibit 3. The Government made the same offer to A. Nicolescu in 2015, when he had counsel, but then Government adjusted the proposed range to 121 to 151 months' imprisonment given the November 2015 amendments to the Sentencing Guidelines, in which the Sentencing Commission adjusted the loss tables for extortion under U.S.S.G. § 2B3.2. *See* U.S.S.G. App. C., amend. 791 (November 1, 2015). The final plea agreement with A. Nicolescu, entered in January 2016, included a stipulated range of 121 to 151 months' imprisonment. *See* Exhibit 4. Tellingly, those ranges were both different from the range in the Government's email to Attorney Felsen, which was 108 to 135 months' imprisonment, *see* Felsen Decl. Ex. B, and different from what A. Nicolescu claims in his statement that he was offered. These discrepancies cast significant doubt on the reliability of A. Nicolescu's claim that the Government specifically told him that petitioner received the same offer he did. Notably, the range of 135 to 168 months' imprisonment, which was in the December 2014 letter to A. Nicolescu, *was* the same as the one included in the plea agreement entered into by co-conspirator Michael Kennedy in 2012. *See* Exhibit 5. Thus it is entirely possible the Government observed to A. Nicolescu that the offer given to him was the same as the one accepted by Kennedy.

Without delving into the content of any specific conversations between A. Nicolescu and the Government, it would certainly have been appropriate for the Government, at some point in its discussions with A. Nicolescu or his counsel, to point out that a guilty plea avoids some of the negative consequences of a conviction at trial. To that end, petitioner's own decision to go to trial is an obvious

cautionary tale. But making such a point to A. Nicolescu—indeed, it is likely his own counsel did the same—did not require that the Government make reference to any specific plea offer made to petitioner. Indeed, that petitioner had the right to plead guilty is not in dispute, and petitioner does not appear to contest attorney Felsen's statements that she advised her client of the guidelines and the risks of going to trial. *See* Felsen Decl. ¶¶ 4-5. It is not clear why it would have been even relevant for the Government to point A. Nicolescu to a specific offer (supposing one actually existed). Instead, it is readily apparent that A. Nicolescu's proposed testimony is unreliable given that A. Nicolescu's supposed recollection conflicts with the March 2011 email, A. Nicolescu's actual offer, and the Guidelines themselves.

The Government has inquired of CI Reeves III ("Reeves"), A. Nicolescu's facility, as directed by the Court. Reeves can arrange a teleconference, but does not have the capacity to allow for a Zoom-based video appearance. The Government declines petitioner's suggestion simply to allow A. Nicolescu's hearsay statement to be received as evidence, particularly given its questionable relevance and credibility. Thus, to procure A. Nicolescu's testimony, the Bureau of Prisons and the United States Marshals Service would need to transport A. Nicolescu to Connecticut. Unnecessary transportation of inmates obviously poses significant pandemic-related risks, including to the inmate himself. Currently, there is one inmate at Reeves with coronavirus. *See* Bureau of Prisons, COVID-19 Cases, *available at* https://www.bop.gov/coronavirus (last visited October 5, 2020). Even

7

then, A. Nicolescu would be exposed to others throughout his transportation from Texas to Connecticut.

Given the risks of transporting A. Nicolescu, and lack of relevance and credibility of his anticipated testimony, the Court may simply exercise its discretion to refuse this subpoena. Alternatively, the Court may choose to hear first from other witnesses in this case, including Attorney Felsen and the petitioner, before deciding whether to order that A. Nicolescu be transported to Connecticut. While this may extend the litigation further, it minimizes risk and stress on the prison system in these uncertain times, and permits the Court to make an informed decision.

IV. <u>Conclusion</u>

For the reasons set forth above, the Court should either *sua sponte* quash petitioner's subpoena to A. Nicolescu outright, or delay consideration of the issue until all other witnesses have testified.

Respectfully submitted,

JOHN H. DURHAM
UNITED STATES ATTORNEY

*/s/ Michael J. Gustafson*

MICHAEL J. GUSTAFSON
ASSISTANT UNITED STATES ATTORNEY
FEDERAL BAR NO. CT01503
450 MAIN ST., RM. 328
HARTFORD, CT 06103
(860) 947-1101
Mike.Gustafson@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on October 7, 2020, a copy of the foregoing Memorandum was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.

The Government will send a copy of this Memorandum to Petitioner at the Wyatt Detention Facility in Central Falls, Rhode Island.

/s/
MICHAEL J. GUSTAFSON
ASSISTANT U.S. ATTORNEY